**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

EGAN-JONES RATINGS COMPANY

*Plaintiff,*

v.

GENTNER DRUMMOND, in his official capacity as the Oklahoma Attorney General,

*Defendant.*

Case No. ___

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Egan-Jones Ratings Company ("Egan-Jones"), brings this Complaint for declaratory and injunctive relief against Gentner Drummond, in his official capacity as Attorney General of the State of Oklahoma, to challenge the enforcement of House Bill 4429 ("H.B. 4429" or the "Act"), including through an injunction prior to its effective date of November 1, 2026.

## INTRODUCTION

1. Egan-Jones is in the business of, among other things, providing proxy advisory services, including information and recommendations regarding matters to be voted upon at shareholder meetings of various companies.

2. Oklahoma recently enacted H.B. 4429, which is specifically directed at proxy advisors and seeks to impose requirements upon them in the event they make recommendations that differ from the recommendations of the management of corporations.

H.B. 4429 does not impose a similar requirement if the proxy advisor recommends shareholders vote as the company's management recommends. Violations of H.B. 4429 carry substantial monetary penalties and also subject proxy advisors to criminal proceedings.

3. On October 8, 2026, this Court heard arguments in a consolidated hearing of two other cases filed by Institutional Shareholder Services, Inc. ("ISS"), and Glass, Lewis & Co., LLC ("Glass Lewis), the two largest proxy advisors in the United States. *See* Case Nos. 26-cv-2111 and 26-cv-2382. Through this Complaint, Egan-Jones raises the same issues regarding the constitutionality of H.B. 4429.

4. H.B. 4429 violates Egan-Jones's First Amendment rights because it discriminates against viewpoint and compels speech.

5. H.B. 4429 also violates the Due Process Clause of the Fourteenth Amendment by regulating activities outside of Oklahoma. The Act applies not only to proxy advisors and other companies located within Oklahoma. Instead, Egan-Jones would be required to make disclosures based on H.B. 4429 regardless of where its clients are located. The division of Egan-Jones that operates its proxy services division, Egan-Jones Proxy Services ("EJPS"), has no clients in Oklahoma.

6. Finally, H.B. 4429 is unconstitutionally vague, which leads to the likelihood of arbitrary and inconsistent enforcement.

**PARTIES**

7. Egan-Jones Ratings Company is a corporation organized in Delaware with its principal place of business at 840 1st Ave., Suite 400, King of Prussia, PA 19406.

8. Defendant Gentner Drummond is the Oklahoma Attorney General and is responsible for enforcing H.B. 4429. *See* H.B. 4429 § 5; Okla. Stat. tit. 15, § 751 *et. seq*. He is sued in his official capacity. Defendant Drummond maintains an office at 313 NE 21st St., Oklahoma City, OK 73105.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because Egan-Jones's claims arise under the United States Constitution and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

10. This Court has authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02.

11. Defendant is not immune under the Eleventh Amendment because this is a pre-enforcement challenge seeking prospective relief for violations of federal law. H.B. 4429 specifically tasks Defendant with enforcing the law. See H.B. 4429 § 5. Defendant has demonstrated a "willingness to exercise that duty," *see Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735-36 (10th Cir. 2024), by challenging prior lawsuits filed to enjoin the enforcement of H.B. 4429 against other proxy advisors. Defendant has not disavowed enforcing H.B. 4429 against Egan-Jones.

12. Egan-Jones has standing to assert the claims made in this Complaint. As a proxy advisor, it is plainly subject to H.B. 4429, which is directed specifically at proxy advisors. H.B. 4429 applies to every report Egan-Jones publishes, regardless of where its clients are located. And Egan-Jones engages in constitutionally protected speech on which H.B. 4429 infringes. Because Egan-Jones sometimes makes recommendations against company management, depending on the voting policy each client selects, and

intends to do so in the future when circumstances justify such recommendations, it faces "a credible threat of prosecution" under the Act. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59, 134 S. Ct. 2334, 2341-42, 189 L. Ed. 2d 246 (2014).

13. The penalties for violating the Act therefore have a chilling effect on Egan-Jones's speech, which itself constitutes an injury-in-fact that gives Egan-Jones standing. *See Wyoming Gun Owners v. Gray*, 83 F. 4th 1224, 1239-40 (10th Cir. 2023).

14. Venue is proper in this District because Defendant resides in this District, 28 U.S.C. § 1391(b)(1), and because substantial events material to Plaintiff's claims occurred in this District, *id.* § 1391(b)(2).

**BACKGROUND**

15. Significant business issues of publicly traded companies are addressed and voted on at meetings of those companies' shareholders on at least an annual basis. In advance of those meetings, companies release proxy statements that provide information regarding the matters to be voted upon.

16. Shareholders frequently vote through proxies rather than attending the meetings and voting in person. Because of the breadth and complexity of the matters on which votes are required, shareholders frequently turn to proxy advisors, such as Egan-Jones, to provide assistance in determining how to vote on those issues. Proxy advisors compile information, provide the results of their research on issues, make recommendations based on their clients' goals, and sometimes execute votes on behalf of their clients according to the proxy advisors' recommendation or according to a client's override of the recommendation.

17. Egan-Jones provides these types of services to its clients, enabling them to make informed decisions about the matters on which votes are being cast. Each client selects the voting policy under which Egan-Jones prepares its recommendations, and Egan-Jones applies that policy consistently and transparently. Under its policies, Egan-Jones makes the recommendations it believes are in the best financial interests of shareholders and most likely to maximize their long-term wealth. In reaching those recommendations, Egan-Jones considers relevant financial factors, such as company performance and total shareholder return, together with governance and other factors relevant to the matter being voted upon. Egan-Jones does not, however, prepare a written financial analysis projecting the costs and benefits of each proposal, and its clients do not request or pay for one. Some of its clients may also request research and information regarding non-financial matters, and Egan-Jones provides reports in response to those requests.

18. Egan-Jones is paid based on the number of reports it provides, and it has no interest in the outcome of any particular vote. Where a client engages Egan-Jones to execute its votes, Egan-Jones casts those votes as the client's agent, in accordance with the voting policy the client has chosen. The client has full visibility into how each vote is cast and can override any vote at any time. Clients seek information from Egan-Jones and consider that information in determining how they choose to vote.

19. Of the 90 clients to which Egan-Jones, through EJPS, provides proxy advisor services, none are headquartered in Oklahoma.

20. Although none of its clients are headquartered in Oklahoma, H.B. 4429 would require EJPS to provide the required disclosures and information to all of its

clients any time it makes a recommendation that is not in line with a recommendation of a company's management.

21. The application of H.B. 4429 is triggered when a proxy advisor makes a recommendation "against company management" "in connection with or in relation to a company or . . . to any person in this state." H.B. 4429 §§ 3(7), 4.

22. Under such circumstances, H.B. 4429 requires a proxy advisor to provide a "written financial analysis" or provide a disclosure that would effectively convey to its clients that the recommendation is unsupported by a written financial analysis.

23. If a proxy advisor opts to provide the "written financial analysis," it must provide "a clear and conspicuous disclosure" to its client that "the proxy advisor has made the recommendation or policy based on a written financial analysis" and that this "analysis is available upon request," *id.* § 4(B)(1)(c)-(d). The proxy advisor must "[m]ake such analysis available within a reasonable time" to any clients that request it. *Id.* § 4(B)(2). Additionally, the proxy advisor must provide, by both electronic means and U.S. mail, a copy of the "written financial analysis" "to the board of directors of each company that is the subject of the service."

24. If the proxy advisor opts not to produce a "written financial analysis," H.B. 4429 requires the proxy advisor to make a "conspicuous disclosure" stating it has "made the recommendation or policy without doing so based on a written financial analysis regarding the impact of that recommended action on company investors." Regardless of the matter under consideration, the financial analysis must "(1) analyze[] the expected short-term and long-term financial benefits and costs to the company of implementing" the proposal; "(2) conclude[] what vote or course of action is most likely to positively

affect shareholder value"; and "(3) explain[] the methods and processes used to prepare the analysis, including the experience and geographic location of the personnel who formed the recommendation." *Id.* § 4(A)(1)(c). The proxy advisor must send the disclosure, electronically and by U.S. Mail, "to the board of directors of each company that is the subject of the service." *Id.* § 4(A)(2). The proxy advisor must also include a statement on its website that its services "include recommendations or policies against company management" that "are not made based on a written financial analysis regarding the impact of that recommended action on company investors." *Id.* § 4(A)(3). This "disclosure" must remain online "[w]hile such services are being provided." *Id.*

25. Violations of H.B. 4429 carry severe consequences. A violation of H.B. 4429 is considered a "deceptive trade practice," *id.* § 5(A), which is a Class D1 felony punishable by a $5,000 fine and up to five years imprisonment for a first offense and up to ten years for subsequent offenses. Okla. Stat. tit. 15, §§ 753(21), 761.1(E), 762(B); *see* Okla. Stat. tit. 21, § 20N(B)-(C). The Attorney General may also seek injunctive relief and civil penalties of up to $10,000 per violation. *See* Okla. Stat. tit. 15, §§ 756.1, 761.1(C)-(D).

26. H.B. 4429 also creates a private right of action for "any person aggrieved by a violation of this act." The "person[s] aggrieved" are not limited to clients of the proxy advisor. Instead, the definition expansively includes any shareholder or other interest holder of the company in issue, as well as the company itself. Thus, where a company is unhappy that a proxy advisor made recommendations contrary to what that company hoped to achieve, it may sue a proxy advisor if the requirements of the Act are allegedly not met.

27. H.B. 4429 violates Egan-Jones's free-speech rights under the First

Amendment. H.B. 4429 would irreparably harm Egan-Jones by infringing upon its constitutional rights under the First and Fourteenth Amendments. The Act arbitrarily assumes corporate management's recommendations will always be right, placing obligations upon Egan-Jones if – and only if – Egan-Jones disagrees with corporate management on matters for which a vote is required. As a result, the Act constitutes viewpoint discrimination.

28. H.B. 4429 also unconstitutionally compels speech from Egan-Jones regardless of which approach Egan-Jones takes with regard to compliance. Egan-Jones is left either to provide a "written financial analysis" that its clients have not requested or paid Egan-Jones to prepare or, alternatively, to announce that it has undertaken no written financial analysis at all.

29. H.B. 4429 is also unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. It provides no information explaining how a "written financial analysis" could be performed with regard to such things as recommending a vote on auditor ratification, and the lack of a statement on which voting on such a non-financial matter is "likely to positively affect shareholder value" would presumably be a violation of the Act. Additionally, the Act includes within the definition of "proxy advisory services" activities such as ratings services, which Egan-Jones provides, that are not based on management proposals, but are instead based on a multitude of factors. For example, it is unclear whether a decreased rating for a company may be deemed "a recommendation against company management on a company proposal," subjecting a proxy advisor that engages in such rating services to the provisions of the Act. The lack of clarity in H.B. 4429 appears to be designed to permit arbitrary enforcement.

30. Finally, H.B. 4429 is unconstitutional because it requires compliance outside of Oklahoma. It compels speech from Egan-Jones regardless of where its clients are located any time Egan-Jones makes a recommendation that is not in line with company management.

**COUNT ONE**
**First and Fourteenth Amendments – Freedom of Speech**

31. Egan-Jones incorporates the preceding paragraphs as if restated herein.

32. H.B. 4429 violates the First Amendment, applicable to the states through the Fourteenth Amendment, because it "abridge[es] the freedom of speech." U.S. Const. amend. I.

33. By providing reports and recommendations to its clients, Egan-Jones exercises its right to free speech. H.B. 4429 constitutes viewpoint discrimination that burdens Egan-Jones's rights because the Act places obligations on Egan-Jones when it makes recommendations adverse to the positions of company management, while requiring nothing of Egan-Jones so long as it supports the recommendations of companies' management.

34. Because of this disparity, H.B. 4429 discriminates based on both viewpoint and content. It imposes obligations upon Egan-Jones any time Egan-Jones's viewpoint departs from that of corporate management. The Act is, therefore, subject to strict scrutiny in evaluating whether it is unconstitutional. *See Nat'l Inst. Of Fam. & Life Advocs. V. Becerra*, 585 U.S 755, 766, 138 S. Ct. 2361, 2371, 201 L. Ed. 2d 835 (2018) ("NIFLA").

35. H.B. 4429, by design, also discriminates against a specific group: proxy

advisors. It does not apply to any other speakers that may take a position regarding the same recommendations made by company management. Thus, H.B. 4429 not only regulates the content of speech regarding a certain matter, but regulates one group of speakers to the exclusion of others, including those who state positions identical to those of Egan-Jones. Because the Act distinguishes among speakers while discriminating based on viewpoint and content, it is not entitled to deference but is, instead, subject to heightened scrutiny when analyzing whether it is unconstitutional. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 563-66, 131 S. Ct. 2653, 2663-64, 180 L. Ed. 2d 544 (2011).

36. H.B. 4429 also unconstitutionally compels speech by forcing proxy advisors to make certain statements if the advisors disagree with corporate management. Proxy advisors must either (i) create a "written financial analysis" to be made available upon request by anyone who receives it, including company management, or (ii) offer a series of caveats that are intended to denigrate the quality of its recommendations.

37. Regardless of the choice Egan-Jones makes, H.B. 4429 "alters the content" of Egan-Jones's speech by compelling it to create speech it would otherwise choose not to create. *See NIFLA*, 585 U.S. at 766, 138 S. Ct. at 2371. Egan-Jones would either be required to generate a written analysis its clients have not requested or compensated the advisor to prepare, or it would be required to make statements about the bases of its recommendations it would not otherwise make. In the absence of H.B. 4429, Egan-Jones would do neither of the things the statute requires.

38. As a result, the Court should determine, pursuant to 42 U.S.C. § 1983, that H.B. 4429 violates Egan-Jones's constitutional rights, its enforcement should be enjoined as against Egan-Jones, and Egan-Jones should be awarded its attorneys' fees and costs

pursuant to 42 U.S.C. § 1988.

**COUNT TWO**
**Fourteenth Amendment – Void for Vagueness**

39. Egan-Jones incorporates the preceding paragraphs as if restated herein.

40. The Fourteenth Amendment's Due Process Clause requires that a state law must make reasonably clear the conduct that is being prohibited and, relatedly, must be sufficiently clear to avoid arbitrary enforcement.

41. H.B. 4429 is unconstitutionally vague as applied to Egan-Jones. Specifically with regard to Egan-Jones, Section 4 of H.B. 4429 defines "proxy advisory service" as more than merely providing information, research and recommendations. For example, ratings services are included within the definition of "proxy advisory service," but it is unclear how a rating could be "against company management on a company proposal or proxy proposal." Ratings are not made in response to corporate management's voting proposals; they are made based on the quality of the company's business, financials and management, as well as external factors affecting the industry in which the company operates. Such external factors have nothing to do with recommendations made by a company's management, yet a rating adjustment made purely based on external conditions could be considered to be subject to the Act.

42. The Act lacks "minimal guidelines to govern law enforcement," *see Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 2298-99, 33 L. Ed. 2d 222 (1972), thereby inviting arbitrary enforcement. It places Egan-Jones in the position of being subject to potential criminal prosecution despite good-faith efforts at compliance. For example, even if Egan-Jones chose to create a "written financial

analysis" it viewed as comprehensive, it would still remain subject to prosecution if the State disagreed.

43. Where, as here, a law burdens speech, "a more stringent vagueness test should apply." *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 1193-94, 71 L. Ed. 2d 362 (1982); *Wyoming Gun Owners*, 83 F. 4th at 1233.

44. As a result, the Court should determine, pursuant to 42 U.S.C. § 1983, that H.B. 4429 violates Egan-Jones's constitutional rights, its enforcement should be enjoined as against Egan-Jones, and Egan-Jones should be awarded its attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT THREE**
**Fourteenth Amendment – Due Process (Extraterritorial Reach)**

45. Egan-Jones incorporates the preceding paragraphs as if restated herein.

46. As discussed above, none of Egan-Jones's clients is headquartered in Oklahoma. H.B. 4429, however, does not limit its reach to information and advice provided by proxy advisors to Oklahoma-based clients. Instead, its disclosure obligations apply regardless of where Egan-Jones's clients are located.

47. The extraterritorial reach of H.B. 4429 violates the Fourteenth Amendment because it "directly regulate[s] out-of-state transactions" involving persons with "no connection" to Oklahoma. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 143 S. Ct. 1142, 215 L. Ed. 2d 336 (2023).

48. As a result, the Court should determine, pursuant to 42 U.S.C. § 1983, that H.B. 4429 violates Egan-Jones's constitutional rights, its enforcement should be enjoined

as against Egan-Jones, and Egan-Jones should be awarded its attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**DEMAND**

49. For the foregoing reasons, Egan-Jones demands the following relief:

a. A declaration that H.B. 4429 unconstitutionally violates Egan-Jones's right to free speech under the First and Fourteenth Amendments and, therefore, is unenforceable with regard to Egan-Jones;

b. A declaration that H.B. 4429 is void for vagueness under the Due Process Clause of the Fourteenth Amendment and, therefore, is unenforceable with regard to Egan-Jones;

c. A declaration that H.B. 4429 violates the U.S. Constitution's prohibitions against extraterritorial regulation and, therefore, is unenforceable with regard to Egan-Jones;

d. A preliminary and permanent injunction enjoining the enforcement of H.B. 4429 against Egan-Jones;

e. Judgment in favor of Egan-Jones;

f. Its reasonable attorneys' fees and costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

g. All other relief the Court deems just and proper.

Respectfully submitted,

*/s/ Michael McClintock*
Michael McClintock
Spencer Fane LLP
9400 N. Broadway Ext., Suite 600
Oklahoma City, OK 73114
Telephone: (405) 844-9900
mmcclintock@spencerfane.com

Brian M. Johnson (KY Bar #86995)
*Pro hac vice* forthcoming
Dickinson Wright PLLC
300 W. Vine Street, Suite 1700
Lexington, KY 40507
Telephone: (859) 899-8700
bjohnson@dwlaw.com
ATTORNEYS FOR PLAINTIFF